IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WELLS FARGO BANK N.A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:24-cv-326** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**Susan Paradise Baxter, United States District Judge**

Robert and Gladys Waisley (the "Waisleys") were the purchasers of a residence that was insured by State Farm Fire and Casualty Company ("State Farm"). After a fire damaged the Waisleys' property, State Farm issued a check for insurance proceeds that was made out jointly to the Waisleys and to Wells Fargo Bank, N.A. ("Wells Fargo"), the mortgagee of the property. When the Waisleys did not endorse the check, Wells Fargo sought to obtain a new check from State Farm that would be made out solely to Wells Fargo. State Farm refused, and Wells Fargo filed this civil action, claiming that State Farm breached its obligations under the subject insurance policy.

Pending before the Court are cross motions for judgment on the pleadings filed by Plaintiff Wells Fargo and Defendant State Farm. For the reasons that follow, these motions will be denied, and Wells Fargo will be given an opportunity to join the Waisleys, or their appropriate representative(s), as necessary parties to this action.

## I. Standard of Review

A court may grant a motion under Federal Rule of Civil Procedure 12(c) "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (internal quotations and citation omitted). In reviewing a Rule 12(c) motion, we utilize the same standard of review that is applied to motions under Rule 12(b)(6). *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023); *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022). Thus, the "court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) (citation omitted). A plaintiff can survive a Rule 12(c) motion if the complaint contains "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (internal quotations omitted). "'When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief.'" *Nautilus Ins. Co. v. TRH, LLC*, No. CV 24-5787, 2026 WL 900509, at *1 (E.D. Pa. Mar. 30, 2026) (quoting *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)).

In reviewing a Rule 12(c) motion, the Court may consider the contents of the pleadings, along with any exhibits appended thereto. *Wilson*, 57 F. 4th at 140. That includes, in this case, a copy of the subject insurance agreement, as well as the contents of the mortgage agreement between Wells Fargo and the Waisleys, among other documents. ECF No. 1-2; ECF No. 14-1.

## II. Factual Background

During times relevant to this case, the Waisleys owned a home located on Iroquois Avenue in city of Erie, Pennsylvania (the "Property"). ECF No. 1-2, Compl. ¶7; ECF No. 14, ¶7. In 2011, the Waisleys executed a mortgage on the Property (the "Mortgage"), which was later transferred to Wells Fargo and held by Wells Fargo as of October 29, 2023, when a fire damaged the structure. *Id.*, ¶8. The Mortgage contains a "Property Insurance" provisions, which states:

> [A]ny insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction provided that such inspection shall be undertaken promptly. . . . If the restoration or repair is not economically feasible, or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument.

ECF No. 1-2 at 21.

At the time of the fire, the Waisleys maintained a homeowners insurance policy on the Property, which was issued to them by State Farm at Policy No. 38BAE3841 (the "Policy"). ECF No. 1-2, Compl. ¶¶9-10; ECF No. 14, ¶¶9-10; ECF No. 14-1. Wells Fargo is listed as a mortgagee on the Policy. ECF No. 1-2, Compl. ¶11; ECF No. 14, ¶11; ECF No. 14-1 at 5.

The Policy includes a "Loss Payment" provision stating: "We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment." ECF No. 14-1 at 42.[1] The Policy defines "we" and "us" to mean State Farm, and "you" and "your" to mean the named insured. *See* ECF No. 14-1 at 24.

The Policy also contains the following "Mortgagee Clause":

> a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and you, as interests appear. If more than one

[1] The Policy utilizes bold and italicized typeface for certain terms that are defined elsewhere in the Policy. Because relevant terms are explained in this Memorandum Opinion and the Policy's typeface is not otherwise relevant, it has been edited out.

mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

b. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies us of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if you have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relation to Appraisal, Suit Against Us, and Loss Payment apply to the mortgagee.

c. If we cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If we pay the mortgagee for any loss and deny payment to you:

(1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

ECF No. 14-1 at 42-43.

Wells Fargo alleges that, as of the date of the fire loss, the Waisleys owed $75,717.36 under the Mortgage. ECF No. 1-2, Compl. ¶14. An insurance claim was submitted to State Farm for damage to the Property, and State Farm subsequently issued a check for $48,380.84 made payable jointly to the "ESTATE OF ROBERT L. WAISLEY & GLADYS M. WAISLEY & WELLS FARGO BANK NA #936 ITS SUCCESSORS AND/OR ASSIGNS." ECF No. 1-2, Compl. ¶¶15-16; ECF No. 14, ¶¶15-16; ECF No. 1-2 at 37.

Wells Fargo claims that it contacted the Waisleys multiple times to obtain their endorsements on the Check. ECF No. 1-2, Compl. ¶ 18 and Ex. D. The Waisleys and/or their personal representatives apparently failed to respond or endorse the Check, precluding Wells Fargo from depositing it and using the funds to either rehabilitate its secured collateral or apply the proceeds to the Waisleys' outstanding Mortgage balance. ECF No. 1-2, Compl. ¶¶ 17-19. After receiving no response from the Waisleys, Wells Fargo sent a demand letter on October 7, 2024 to State Farm requesting reissuance of the Check solely in the name of Wells Fargo. ECF No. 1-2, Compl. ¶ 22. State Farm has declined to do so. ECF No. 1-2, Compl. ¶ 23.

This suit followed, in which Wells Fargo claims that State Farm breached its obligations under the Policy by failing to issue a check made payable solely to Wells Fargo. The parties have filed cross-motions for judgment on the pleadings, which are ripe for resolution.

## III. Applicable Law

Under Pennsylvania law,[2] the court's role in interpreting an insurance policy is to "'ascertain the intent of the parties as manifested by the language of the written instrument.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Am. Auto. Ins. Co. v. Murray,* 658 F.3d 311, 320 (3d Cir. 2011)). Where the policy language is clear and

[2] The Court's subject matter jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332. As a federal court sitting in diversity, this Court must apply the substantive law -- including the choice-of-law rules -- of the state in which this court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Here, the insurance policy at issue covered property located in Pennsylvania, and it was executed by insured parties who were living in Pennsylvania. As both Plaintiff and Defendant agree that Pennsylvania law applies to the disputed contractual claim, the Court will similarly apply Pennsylvania law. *See Schiavone Constr. Co. v. Time*, Inc., 735 F.2d 94, 96 (3d Cir.1984) ("The parties implicitly agree that New Jersey law governs, and the district court applied New Jersey law. Inasmuch as New Jersey has an interest in the outcome of this litigation ... we have no cause *sua sponte* to challenge that choice of law."); *84 Lumber Co., L.P. v. Bryan Const. Co.*, Case No. 2:09-cv-1030, 2011 WL 666209, at *5 (W.D. Pa. Feb.14, 2011) ("In this case, the parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis.").

unambiguous, the court must enforce that language as written. *Id.* at 140-141 (citing *Am. Auto. Ins. Co.*, 658 F.3d at 321).

Contractual language is ambiguous "'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Wilson*, 57 F. 4th at 141 (quoting *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). Ambiguous provisions in an insurance policy are construed against the insurer. *Id.* (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999)). Nevertheless, courts will not "'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.'" *Id.* (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "And if possible, 'a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.'" *Id.* (quoting *Am. Auto. Ins. Co. Auto.*, 658 F.3d at 321).

## IV. Discussion

The parties each request that, based on the pleadings, the Court enter judgment in their favor on Wells Fargo's breach of contract claim. To establish a claim for breach of contract in Pennsylvania, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Tinkelman v. Liberty Mut. Ins. Co.*, No. 3:25CV632, 2026 WL 2574329, at *3 (M.D. Pa. Aug. 31, 2026) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.,* 137 A.3d 1247, 1258 (Pa. 2016)). Here, State Farm argues there is no contract as between itself and Wells Fargo and that no contractual breach occurred in any event.

*(i) Existence of a Contract*

The subject contract in this case is the insurance policy issued by State Farm to the Waisleys. There is no dispute as to the legal existence of that contract. It is also undisputed that Wells Fargo is listed on the Policy as mortgagee of the property in question.

Nevertheless, State Farm characterizes the Policy's "Mortgagee" and "Loss Payment" provisions as "simple" clauses which do not give rise to a separate contract between the insurer and the mortgagee. State Farm therefore contests Wells Fargo's ability to assert its contractual claims.

Under Pennsylvania law, "the basic difference between a simple loss-payable clause and a standard mortgage clause is that the former is subject to such defenses as the insurer may have against the mortgagor, while the latter is not." *Cardwell v. Chrysler Fin. Corp*., 804 A.2d 18, 24 (Pa. Super. Ct. 2002) (citing *Overholt v. Reliance Ins. Co*., 179 A. 554, 556 (Pa. 1935)). "[T]he simple loss clause places the mortgagee (lienholder) in the shoes of the insured. Therefore, if the insurer can assert a defense against the insured, then the insurer can assert this same defense against the lienholder." *Id.* (citing *Gen. Elec. Credit Corp. v. Aetna Cas. and Sur. Co.,* 263 A.2d 448, 454 (Pa. 1970)). "Under this type of policy, the lienholder is simply a party appointed to receive the insurance proceeds to the extent of its interest, and its right to recovery is no greater than the right of the insured." *Id.* (citing *Gen. Elec. Credit Corp.,* 263 A.2d at 454).

By contrast, a standard mortgage clause is broader and provides more protection for the mortgagee or lienholder. *Cardwell,* 804 A.2d at 24; *see Mortgagee Clause,* Black's Law Dictionary (12th Ed. 2024) (West) (defining "**standard mortgage clause**" as "[a] mortgage clause that protects the mortgagee's interest even if the insured mortgagor does something to invalidate the policy"). A standard mortgage clause creates, in effect, an insurance contract

between the mortgagee and the insurer which is "separate, distinct, and independent from that constituted between the mortgagor and the insuring company by the other provisions of the policy." *Overholt,* 179 A. at 556; *see* Black's Law Dictionary, *supra* (noting that, "[i]n effect," a standard mortgage clause "creates a separate contract between the insurer and the mortgagee").

The language in the insurance policy is controlling, *to wit*:

> If the clause contains such language as to indicate that coverage of the mortgagee (lienholder) will not be invalidated by the acts or omissions of the insured, it is a standard loss payable clause.... Conversely, if the clause does not contain such language, or explicitly states that the mortgagee's interest will not be protected from the acts or omissions of the insured, then it is a simple loss payable clause. ... This is important to determine if [the lienholder] has the same rights or more rights than the insured.

*Cardwell,* 804 A.2d at 24 (internal citation omitted). *See Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 430 (3d Cir. 2007) ("To determine whether the loss payable clause in the policy at issue in this case was a standard clause or an ordinary clause, we must look at whether Gallatin, as the loss payee, had rights greater than Mon View, as the insured.").

In *Williams v. Nationwide Ins.*, Civil Action No. 22-1090, 2023 WL 2632212 (E.D. Pa. Mar. 24, 2023), the court examined policy language that was materially identical to the Mortgagee Clause in the Waisleys' Policy and found that the language constituted a standard mortgage clause. The court noted that, under the policy, the mortgagee could recover even if Nationwide denied a homeowner's claim. *Cf. Williams,* 2023 WL 2632212, at *3 and *6 (citing policy language stating: "If we deny your claim, that denial will not apply to a valid claim of the mortgagee"), and ECF No. 14-1 at 42, ¶10(b) (Mortgagee Clause: ... "If we deny your claim, that denial will not apply to a valid claim of the mortgagee ..."). In addition, like the Waisleys' Policy here, the policy in *Williams* required the insurer to provide the mortgagee with at least ten days' notice before the date of cancellation. *Cf. Williams, supra*, at *3 and *6, ECF No. 14-1 at 42, ¶10(c)). Thus, because the mortgage clause gave the mortgagee in *Williams* greater rights

than the insured, the mortgage clause in the Policy was deemed to be a "standard" clause that afforded contractual rights to the mortgagee. *Williams, supra,* at 6; *see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 430 (3d Cir. 2007) (property insurance policy afforded greater rights to the loss payee than to the insured by virtue of an independent notice provision, making the provision a "standard" loss payable clause); *Business Dev. Corp. of Georgia, Inc. v. Hartford Fire Ins. Co.*, 747 F.2d 628, 630 (11th Cir. 1984) (mortgage clause gave greater rights to mortgagee where the insurance policy provided the mortgagee an independent right to ten days' notice upon cancelation).

The reasoning of *Williams* applies here and is persuasive. Therefore, the Court finds that the Policy contains a "standard" mortgage clause.[3]

*(ii) Breach of Contract*

The next question is whether Wells Fargo can establish that State Farm breached its contractual obligations under the subject policy. Wells Fargo argues in the affirmative, reasoning that it is entitled to sole payment of the proceeds under both the "Mortgagee" and "Loss Payment" clauses in the Policy. Wells Fargo posits that, under both of these clauses, State Farm insured its secured interest in the Property and was required to issue sole payment to Wells Fargo up to the outstanding amount of the mortgage debt on the date of loss. Upon receiving the insurance proceeds, Wells Fargo then had the right to rehabilitate the property or apply it to the mortgagors' outstanding mortgage balance.

---

[3] Even if the Policy contains only a "simple" (sometimes referred to as an "open") clause, Wells Fargo may well have standing to sue as an intended third-party beneficiary of the Policy. *See, e.g., Fredericks v. Assurant Specialty,* Civil Action No. 26-cv-1378, 2026 WL 2335516, at *3-4 (E.D. Pa. Aug. 12, 20216) (discussing third-party beneficiary status); 13 Williston on Contracts §37:53 (4th ed.) (noting that "loss payable" or "open mortgage" clauses in a fire insurance policy "make the mortgagee a protected third-party beneficiary and give it a direct right of action against the insurer").

State Farm counters that it satisfied its contractual obligations when it issued the check made out to both Wells Fargo and the Waisleys. State Farm points to the Mortgagee Clause, which obligates the insurer to issue a draft for any covered loss "to the mortgagee and [the insureds], as interests appear." According to State Farm, this language *requires* that both payees appear on the check, and issuing a payment solely to Wells Fargo would constitute a breach of its contractual duties.

Thus, the narrow issue before the Court is whether State Farm has a contractual duty to issue a check that is payable solely to Wells Fargo, where the amount of Wells Fargo's security interest in the insured property exceeds the amount of the insurance proceeds, and the insureds are unwilling or unable to endorse the insurance check. Having fully considered the parties' respective arguments, the Court finds Wells Fargo's interpretation of the Policy to be more persuasive than State Farm's.

First, the Court agrees that the language in the Mortgagee Clause promising to pay the mortgagee and the insured "as interests appear" unambiguously gives Wells Fargo priority to the insurance proceeds over the insureds, at least to the extent that Wells Fargo's security interest exceeds the amount of the insurance proceeds that are payable under the Policy. Also, the Loss Payment Clause expressly states that State Farm will pay the insured "unless some other person ... is legally entitled to receive payment," and the Property Insurance provision in the Mortgage creates that "legal entitlement" by giving Wells Fargo the right to hold the insurance proceeds while the insureds complete repairs to the property.

Second, the Loss Payment and Mortgagee Clauses unambiguously obligate State Farm to "pay" the covered loss. "Payment is defined as the '[p]erformance of an obligation, [usually] by the delivery of money.'" *Romaine v. W.C.A.B. (Bryn Mawr Chateau Nursing Home)*, 901 A.2d

477, 483 (Pa. 2006) (quoting Black's Law Dictionary 1150 (7th ed. 1999) (alterations in the original); *see* Black's Law Dictionary (12th ed. 2024) (West) (defining "payment" as the "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."). Under the Pennsylvania UCC, only "[p]ayment" or "certification" of an uncertified check -- not mere issuance -- "results in discharge of the obligation," 13 Pa. Stat. and Cons. Stat. Ann. §3310(b) (West). Moreover, an instrument made payable to two or more persons jointly (i.e., "*not* alternatively") "is payable to all of them and may be negotiated, discharged or enforced *only by all of them*." 13 Pa. Stat. and Cons. Stat. Ann. §3110(d) (West) (emphasis added).

Thus, "[u]nder Pennsylvania law, payment by check constitutes a conditional payment." *United States v. Zarra,* 477 F. App'x 859, 861 (3d Cir. Apr. 19, 2012). "The condition of the payment is not accomplished until payment of the monetary funds is actually received ... [I]f the transfer of the funds never occurs, then payment is never made." *Id.* (internal quotation marks and citation omitted) (holding that taxpayers did not fully discharge their obligation to the IRS by issuing a check in the amount of $179,501, where only $179.50 was actually transferred to the IRS); *see also Romaine,* 901 A.2d at 482 ("[P]ayment by check constitutes a conditional payment of the obligation once it is received, the condition being its collectibility from the bank on which it was drawn.") (cleaned up).

Bearing these principles in mind, this Court reads the Policy as obligating State Farm to "pay" the mortgagee up to the limit of its security interest in the insured Property, and part of this contractual duty is ensuring that the mortgagee can negotiate the instrument of payment. To the extent the Policy language can be viewed as ambiguous on this point, it is to be construed against

State Farm and in favor of Wells Fargo, leading to the same conclusion. *See Wilson*, 57 F. 4th at 141.

Neither the parties nor this Court have identified a case that addresses how Pennsylvania law applies to this precise issue. However, there are at least some decisions from other jurisdictions that appear to support Wells Fargo's position. *See, e.g., First Bank and Trust v. Scottsdale Ins. Co.,* Civil Action No. 14-2017, 2015 WL 3409473, at *11 (E.D. La. May 27, 2015) (plaintiff mortgagee stated a claim for breach of an insurance contract where insurer issued payment jointly to the insured and the mortgagee; mortgage clause obligated the insurer "to actually make payment to Plaintiff in accordance with its interests"; therefore, "if [the insurer] attempts to make payment, but this attempt is unsuccessful, then ... the insurer[ ] has not discharged its obligations under the policy"); *Impac Funding Corp. v. Amica Mut. Ins. Co.*, Civil Action No. 1:12-cv-873, 2013 WL 1136860, *5 (N.D. Ga. Mar. 18, 2013) (rejecting insurer's argument that its only obligation under insurance policy was to issue payment jointly to the insured and the insured's lienholder, without any obligation to insure "that each listed payee on the payment actually endorses same, or that the funds are used as anticipated"; court found that, where third party had forged endorsements on an insurance check and absconded with the proceeds, lienholder stated plausible claim against insurer for breach of contract, since the insurer "was obligated under the Insurance Policy to *pay* the [lienholder], not merely to issue the Checks, which were never provided to the [lienholder]") (emphasis in the original); *Parmalee v. Standard Fire Ins. Co.,* 697 F. Supp. 2d 1069, 1077 (E.D. Missouri 2010) (insurance policy mortgage clause, which stated that insurer would pay mortgagee and insured, "as interests appear," required insurer to make payment first to mortgagee for the value of its lien; insurer could not make additional payments to the insured until the mortgage was extinguished);

*Continental Mortg. and Equity Trust v. Meridian Mut. Ins. Co.*, 969 F. Supp. 460, 465 n.9 (E.D. Mich. 1997) (court noting, in dicta, that insurance company erred in making check out jointly to mortgagee and the insured: "It is undisputed that this third check represented building and structural damage and losses. Under the plain terms of the Mortgagee Clause in the Policy, then, [the insurer] should have made the check out to [the mortgagee] ***only***.") (emphasis in the original).

State Farm, by contrast, has not cited any significant persuasive authority in support of its position.

Therefore, to the extent this Court must make a prediction about how the Pennsylvania Supreme Court would rule on this matter, this Court predicts that the Pennsylvania Supreme Court would favor Wells Fargo's interpretation of the Policy. Consequently, the Court finds that Wells Fargo's theory of contractual breach is plausible, and State Farm's motion for judgment on the pleadings must be denied.

At the same time, however, the Court concludes that it cannot grant Wells Fargo's Rule 12(c) motion on this record. Wells Fargo contends that the Waisleys owned in excess of $75,000 on their mortgage at the time of the fire, and that the entirety of the subject $48,380.84 check should have been made payable solely to Wells Fargo. Notably, however, the amount of the Waisleys' mortgage debt was not conceded by State Farm, and the insureds, who are potentially in a position to challenge Wells Fargo on that point, are not currently parties to this action. Given the nature of Wells Fargo's claims, the potential for State Farm to incur double or conflicting obligations, and the possibility that the Waiselys' due process rights might be impaired if this dispute is conclusively settled without them, the Court views the insureds as indispensable parties in the context of this case. *See* Fed. R. Civ. P. 19(a)(1)(B). Accordingly,

consistent with Federal Rule of Civil Procedure 19(a)(1)(B), the insureds (or their representative(s)) must be joined, if feasible.

## V. Conclusion

Accordingly, based upon the foregoing reasons, State Farm's motion for judgment on the pleadings will be denied and Wells Fargo's motion for judgment on the pleadings will be denied without prejudice. The case will be administratively closed pending the joinder of the insureds or their appropriate representative(s) as indispensable parties.

An appropriate Order follows.

Susan Paradise Baxter

SUSAN PARADISE BAXTER
United States District Judge